**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0385-20

B.B.,

    Plaintiff-Respondent,

v.

M.B.,

    Defendant-Appellant.

_____

Submitted October 14, 2021 – Decided November 8, 2021

Before Judges Mawla and Mitterhoff.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FM-13-1694-11.

Rozin Golinder Law, LLC, attorneys for appellant (Alyssa A. Bartholomew, on the brief).

Respondent has not filed a brief.

PER CURIAM

Defendant M.B.[1] appeals from an August 26, 2020 order that adjudicated post-judgment disputes with plaintiff B.B. regarding the following: defendant's alimony arrears; emancipation of the parties' daughter L.B; plaintiff's child support obligation from October 31, 2019, until July 4, 2020; defendant's child support obligation as of July 4, 2020; plaintiffs obligation to pay for their daughter R.B.'s unreimbursed medical expenses; plaintiff's obligation to contribute to their children's educational expenses, car insurance premiums, monthly health insurance premiums, vehicle payments, and cell phone expenses; and whether defendant was entitled to an offset of his alimony arrears based on plaintiff's withdrawal of funds from L.B.'s Fidelity Investment account (Fidelity account). We affirm in part, reverse in part, and remand in part for more detailed findings of fact and conclusions of law.

We discern the following facts from the record. The parties married in 1994 and have two daughters. L.B. is currently twenty-four years old, and R.B. is twenty years old. In September 2012, the parties divorced by way of a Dual

---

[1] We use initials to protect the privacy of the parties as we find that there is a compelling interest that outweighs the Judiciary's commitment to transparency. Because the parties' children have the same initials, we use fictitious initials.

A-0385-20

Judgment of Divorce, which incorporated the parties' Marital Settlement Agreement (MSA), reached while both parties were represented by counsel.

The MSA stated, regarding certain Fidelity accounts maintained by plaintiff for the children's educations, plaintiff "shall not remove any funds from the . . . accounts, except with written consent of the [defendant]." The MSA also provided that the parties would share legal custody of the two children. Defendant retained residential custody of L.B., while plaintiff retained residential custody of R.B. Further, the MSA obligated defendant to pay $3,269.23 bi-weekly in permanent alimony.

Pertinent to this appeal, the MSA required defendant pay plaintiff $200 bi-weekly in child support. The MSA stated child support would "continue until the child[ren] [are] emancipated," which is triggered upon "[r]eaching the age of [eighteen], if the child is not enrolled in a full-time education program."

It is undisputed that plaintiff, contrary to the MSA, removed funds from L.B.'s Fidelity account without defendant's consent. Plaintiff removed $7,400 in 2014, $10,900 in 2015, and $9,190 in 2016, respectively. In 2017, plaintiff withdrew $12,242 from L.B.'s Fidelity account but deposited $11,200.

In December 2018, plaintiff moved to North Carolina. As a result, R.B. moved in with defendant to finish her senior year of high school in New Jersey.

3

At that point, both L.B. and R.B. were living with defendant; therefore, defendant was not obligated to pay child support. Relying on the increased costs incurred now that both children resided with him, and alleged discussions with plaintiff, defendant unilaterally reduced his alimony payments, paying only $2,770 instead of $3,269.23 as required under the MSA.

In January 2019, plaintiff sent defendant several text messages indicating that her alimony was "short" and "missing" $500. The next month, defendant sent plaintiff an email to "make sure [she] under[stood] and agree[d] with what [they] discussed" and, if so, he would "have it drawn up in a consent order." In March 2019, defendant emailed plaintiff that he was "[s]till waiting for a response." Over the next several months, plaintiff sent defendant various communications notifying him that his payments were either non-existent or incomplete.

In August 2019, plaintiff filed a motion seeking alimony arrears and certified that defendant's payments were "inconsistent" and that she was "completely missing a payment" in June 2019. Plaintiff alleged that the arrears totaled $14,311.07 and requested that the alimony obligation be made payable through the Monmouth County Probation Division. She also sought counsel fees and costs.

A-0385-20

In October 2019, defendant filed a cross-motion, opposing plaintiff's application and demanding that: (1) alimony be reduced to $2,770 biweekly or, in the alternative, the child support be recalculated; (2) plaintiff contribute fifty percent of the children's monthly health insurance premium; (3) plaintiff contribute to the monthly cost of the children's vehicle payments proportional to the parties' income; (4) plaintiff contribute to the monthly cost of the children's cell phone payments; (5) plaintiff be sanctioned for the removal of funds from the children's Fidelity accounts; and (6) plaintiff contribute forty-two percent to the cost of L.B.'s undergraduate education as well as the costs related to the children's school expenses, and reimburse him $17,918.04 for her share of R.B.'s 2019-2020 tuition.

In November 2019, plaintiff filed a reply certification. She denied that she agreed to reduce alimony. She further requested that L.B. be emancipated due to her failure to maintain full-time enrollment at college and disputed that she is required to contribute to the cost of the children's health insurance pursuant to the MSA. Plaintiff also claimed that the MSA is silent as to the issues raised by defendant with respect to the car payments and the cell phone bills. Plaintiff contended that she should not be responsible for those costs now, particularly because defendant did not receive her consent or input. She argued

A-0385-20

that she should not be compelled to contribute to L.B.'s college expenses because she was never informed of her decision to attend Monmouth University.

On November 15, 2019, the motion judge issued an order, noting that both parties withdrew their respective motions without prejudice. The judge, with the consent of the parties, ordered mediation in December 2019. In addition, the judge ordered that defendant pay $4,000 in arrears within seven days and that he make his $3,269.23 alimony payments, which may be retroactively modified by the mediator. Pursuant to the Sole Parenting Worksheet of the Child Support Guidelines, the judge ordered plaintiff temporarily pay defendant $304 per week in child support for R.B. The order also stated "[a]ll other issues and relief from the parties' withdrawn [m]otion and [c]ross [m]otion shall be addressed at mediation."

The efforts at mediating the dispute were unsuccessful,[2] and the parties appeared again before the motion judge on February 5, 2020. On February 20, 2020, the judge entered an order pursuant to the five-day rule, R. 4:42-1(c), scheduling a plenary hearing and reducing defendant's alimony payments to $2,500, subject to reallocation pending the outcome of the plenary hearing, "in

---

[2] Defendant apparently filed for bankruptcy in December 2019.

A-0385-20

consideration [of] the parties' financial obligations to each other including alimony, child support and unreimbursed medical expenses."

Due to COVID-19, the plenary hearing was delayed until July 2020. Plaintiff and defendant testified at the rescheduled three-day plenary hearing.

Plaintiff testified that she paid $2,333.15 towards L.B.'s Spring 2016 college semester. Plaintiff denied that she agreed to modify defendant's alimony obligation. Plaintiff stated that when she moved to North Carolina, R.B. resided with defendant and she no longer received child support. Plaintiff asserted that an alimony payment in the amount of $500 in the beginning of January 2019 was missing.

Plaintiff alleged that defendant "never" consulted her about any of the out-of-network costs associated with the children nor expenses in excess of $150. She did not believe she should contribute to the children's college expenses because she was not there and did not know how defendant spent the money.

Plaintiff also sought L.B.'s emancipation because "she doesn't go to school full time." Plaintiff testified how L.B. planned "to go to Brookdale [Community College] for two years and then move on to finish the last two years at another selected college" but she was unsuccessful. On cross-examination, plaintiff admitted to withdrawing funds out of Fidelity accounts in violation of

7

the MSA because there were "a lot of skipped checks" and L.B. "asked [her] for money."

Defendant testified that the email exchange was a follow-up to a phone call wherein the parties agreed to reduce the alimony payments because L.B. and R.B. were living with defendant. Although the agreement was never memorialized into a consent order, defendant explained that the parties "had never memorialized anything into a consent order."

Defendant claimed that both L.B. and R.B. are completely financially dependent on him and they both have psychological issues. As to L.B.'s medical expenses, defendant contends the total out-of-pocket costs in 2019 amounted to $2,514.22. Defendant further claimed that the expenses incurred over $150 for the children were medically necessary and emergent and did not warrant plaintiff's approval as required under the MSA. He conceded on cross-examination that "anything over the $150 amount I will take responsibility for because I think it was [an] emergency. So out of [a] [$]170 I will take the $20 additional responsibility."

With respect to L.B.'s education, defendant testified that from 2017 to 2018, L.B. did not attend any classes. L.B. did not attempt any credits for the Spring 2020 semester.

8

Defendant considered both children's vehicle expenses a necessary expense. Defendant acknowledged on cross-examination that, if plaintiff had secured a vehicle for the children, he would have been entitled to input on the decision.

In his August 26, 2020 oral opinion, the judge rejected defendant's argument that the parties agreed to modify his alimony obligation. Plaintiff never responded to defendant's request. Indeed, the judge noted that this was confirmed by defendant's follow-up email advising her that he was waiting for a response. The judge determined that, despite courts favoring settlements, there were "no final agreed upon terms," nor proof "whatsoever of entry into any agreement" and was not "properly reduced to writing as per the [MSA]."

The judge found that there was clearly "some bad faith . . . in this matter by . . . defendant." He found that plaintiff was forced to file a motion, attempt mediation, attend an extended plenary hearing, and "litigate over an agreement that never existed." He also found that defendant failed to follow consent orders entered during the pendency of the matter. Notwithstanding, he remained "bewildered" at plaintiff's unilateral withdrawal of funds from L.B.'s Fidelity account, which demonstrated a "similar contempt to . . . defendant as he has exhibited towards her." Therefore, the judge concluded that attorney's fees were

not warranted for either party.  The judge also "penalized" plaintiff in the amount of $10,000, for the funds she withdrew from L.B.'s account, which he ordered to be deducted from defendant's arrears.

As to the issue of emancipation, the judge found that L.B. has been unsuccessful in completing a "two[-]year community college program" over the past four years.  He highlighted that there was no testimony or evidence about why L.B. did not and could not work.  The judge ultimately concluded, after considering the financial circumstances of the parties, that L.B. should be emancipated.

The judge concluded that the "essence of this . . . [oral] decision has been set forth so that it is clear that the agreement which will be enforced is the [MSA] entered into by the parties."  That same day, the judge issued a written order. Apart from the issues of emancipation and attorney's fees, the judge in his oral opinion did not address the remaining issues.  Nor did he issue a written statement of reasons attached to the order explaining his reasoning.

On appeal, defendant raises the following arguments for our consideration:

POINT I

THE TRIAL COURT ERRED IN FAILING TO
ORDER PLAINTIFF TO CONTRIBUTE TO THE

CHILDREN'S UNREIMBURSED MEDICAL EXPENSES, [R.B.'S]. . . 2019-2020 COLLEGE TUITION AND [R.B.'S] . . . SCHOOL EXPENSES AS PLAINTIFF WAS EXPLICITLY ORDERED TO DO SO PURSUANT TO THE PARTIES' [MSA] . . . .

POINT II

THE TRIAL COURT ERRED IN EMANCIPATING [L.B.] . . . .

POINT III

THE TRIAL COURT ERRED IN THE CALCULATION OF CHILD SUPPORT AND PAYMENT OF THE CHILDREN'S HEALTH INSURANCE PREMIUM . . . .

POINT IV

THE TRIAL COURT ERRED IN FAILING TO ORDER PLAINTIFF TO CONTRIBUTE TO THE CHILDREN'S MONTHLY VEHICLE PAYMENT, CAR INSURANCE, AND MONTHLY CELL PHONE EXPENSE RETROACTIVE TO AUGUST 2018 . . . .

POINT V

THE TRIAL COURT ERRED IN ORDERING INCONSISTENT RELIEF AS TO THE CHILDREN'S FIDELITY ACCOUNTS. . . .

Our review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). We typically accord deference to the Family Part judges due to their "special jurisdiction and expertise in family matters." Id. at 413. The

11

judge's findings are binding so long as they are "supported by adequate, substantial, credible evidence." Id. at 412. (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). Thus, we will not "disturb the 'factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Ibid. (quoting Rova Farms, 65 N.J. at 484). We, however, review de novo "the trial judge's legal conclusions, and the application of those conclusions to the facts." Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015) (quoting Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

Emancipation occurs "when the fundamental dependent relationship between parent and child is concluded, the parent relinquishes the right to custody and is relieved of the burden of support, and the child is no longer entitled to support." Filippone v. Lee, 304 N.J. Super. 301, 308 (App. Div. 1997). Although the rebuttable presumption is that a child is emancipated at the age of eighteen, "the issue is always fact-sensitive and the essential inquiry is whether the child has moved 'beyond the sphere of influence and responsibility exercised by a parent and obtains an independent status of his or her own.'" Ibid. (quoting Bishop v. Bishop, 287 N.J. Super. 593, 598 (Ch. Div. 1995)). This

involves a "critical evaluation of the prevailing circumstances including the child's need, interests, and independent resources, the family's reasonable expectations, and the parties' financial ability, among other things." Dolce v. Dolce, 383 N.J. Super. 11, 18 (App. Div. 2006) (citing Newburgh v. Arrigo, 88 N.J. 529, 545 (1982)).

Because there is an explicit emancipation provision in the MSA, the terms therein govern. See ibid. (noting that agreements to "voluntarily extend the parental duty of support beyond the presumptive age of emancipation" are enforceable, provided they are just and equitable). Pursuant to the MSA, L.B. would be emancipated if, after reaching the age of eighteen, she was not enrolled in a full-time education program.

Defendant argues that L.B. was "almost always enrolled in college full[-]time, except when she was receiving [mental health] treatment after her diagnosis in 2018." (emphasis added). Indeed, defendant acknowledged that from fall 2017 to fall 2018, L.B. did not attend any classes nor attempt any credits for the Spring 2020 semester. By the plain terms of the MSA, L.B. was properly emancipated because she was not enrolled full-time in a higher education program. Defendant simply did not submit enough evidence to rebut the presumption that L.B. should be emancipated. See Llewelyn v. Shewchuk,

440 N.J. Super. 207, 218 (App. Div. 2015) (affirming the termination of child support where there was no evidence that adult child's mixed anxiety and depression interfered with her ability to be independent). The judge did not err in declaring L.B. emancipated as of January 1, 2019.

Regarding the "inconsistent" relief with respect to L.B.'s Fidelity account, defendant's argument on this issue lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). The judge's decision with respect to the Fidelity accounts is affirmed for the reasons expressed by the motion judge.

We reach a different result with respect to the remaining challenged provisions in the order that: denied defendant's request to be reimbursed forty-two percent for the expenses related to the children's post high school education; required plaintiff to pay $450 to defendant for R.B.'s unreimbursed medical expenses, even though defendant was arguably entitled to $507.90; determined defendant was entitled to $243 in child support from October 31, 2019, until July 4, 2020; set defendant's child support obligation as of July 4, 2020, at $403 per week while denying his request to be credited for payment of the children's health insurance premium; and denied defendant's request to have plaintiff contribute to the children's monthly health insurance premium, vehicle payments, and cell phone expenses. The judge memorialized those decisions in

14

an order without providing a written or oral opinion setting forth his factual findings and legal conclusions, as required by Rule 1:7-4(a). "Meaningful appellate review is inhibited unless the judge sets forth the reasons for his or her opinion." Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990). On remand, we direct the judge to analyze the facts and relevant law to enable us to conduct meaningful review. R.M. v. Sup. Ct. of N.J., 190 N.J. 1, 12 (2007); see also R. 1:7-4(a).

Affirmed in part and reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0385-20